Hunt, J.
This is an action brought by an executor under Section 6202, Revised Statutes, for the construction of the will af Thomas Poster. The will was executed March 1, 1906, and probated in this county on January 12, 1909, and is as follows:
‘‘In the Name of the Father op All, Amen.
“I, Thomas Poster, of Cincinnati, Ohio, being of sound mind and memory, and well knowing the uncertainty' of all life, do make, publish and declare the following for, and to be my last will and testament, hereby revoking and cancelling all former wills by me made.
“1. I desire and direct that all my just debts be first paid out of my estate.
“2. I give and bequeath to my beloved wife, Mary Poster, all that part and interest in my estate, real, personal and mixed which is secured to her, as my widow, by the laws of distribution of estates of the State of Ohio, in the cases where wives survive husbands who. die intestate.
“3. I give, devise and bequeath absolutely, all the remainder of my property, real, personal and mixed, after the dispositions in items one and two herein have been made, and wherever the same may be situated, to my dear brother James E. Poster, now of Chicago, Illinois.
“4. I hereby'nominate and appoint my said brother, James E. Foster, and George Clifford, of Cincinnati, Ohio, to be the -executors of this will, and my faith in each justifies me to request herein, as I do, that they be not required to give bond.
‘ ‘ In testimony whereof, I have hereunto set my hand and seal' this 1st day of March, 1906.
‘ ‘ Thomas Foster, (seal) . ■ ’
Thomas Poster died December 27, 1908, at the age of eighty-three, leaving a widow, Mary C. Foster, whom he had married in 1875. She was then a widow with several children, who still *448 survived. At the time of the execution of the will Mrs. Foster owned some property in her own name and was receiving some $1,200 per year from a deceased sister’s estate. Thomas Foster left no children, never 'having had any. He left a brother, James, then about eighty-eight years old, who died a few months after his brother, leaving six children, parties herein.
The estate left by Thomas Foster consisted of about $140,000 personal property, $30,000 of real estate in Hamilton county, Ohio, and about $20,000 of real estate in Newport, Kentucky. All of this property had been acquired by purchase. There is no evidence that the testator’s property at the time of the execution of the will was of any different character.
Counsel for all parties agree that by the widow’s election to take under the will she is barred of her life estate in one-third of the Kentucky property, which would otherwise be secured to her under the laws of Kentucky. Such agreed construction is therefore taken as correct without examination. This controversy is as to the construction to be given to clause two of the will as applied to the personal property and the real estate in Ohio. The widow claims all the personal property and all the real estate in Ohio, i. e., that to which she would be entitled under the laws of Ohio as widow, if her husband had died intestate. The children of James Foster claim the residue of the estate after deducting, however, only that part to which the widow, under the laws of Ohio, would have been entitled if her husband had died intestate leaving children.
-Counsel for the executor and the widow claim that there is no ambiguity patent or latent in clause two when read in connection with the fact that Thomas Foster left no children; while counsel for the children of James Foster claim that such clause is ambiguous in that the “laws of distribution of estates of the state of Ohio in cases where wives survive husbands who die intestate” provide differently in different cases, depending on whether there are surviving children or not and that regardless of the fact that the testator left no children, extrinsic evidence is proper and necessary to determine whether in the use of such phrase in such clause the testator had in mind cases where there were or were not surviving children. Upon this theory evidence *449 was offered by the children, of James Foster as to the situation and circumstances of the testator in reference to the subjects of his disposition and the objects of his bounty, and as included therein, offered evidence tending to show the very great regard which the testator had for his brother and his brother’s daughters, as well as of statements of the testator to them in effect predicting if not promising future financial independence; also evidence tending to show that the testator was somewhat penurious as to Ms wife’s expenditure of his money in pursuance of a policy that she should use her own money for her personal needs, and last of all, the testimony of the attorney who drew and attested the testator’s will, as to what he had told the testator with regard to the laws of Ohio as to the distribuion of estates in cases where wives survive husbands dying intestate with and without children, and as to what he understood the direction of the testator to be as to the disposition of his estate. The attorney testified that his understanding as to what Mr. Foster desired his wife to have was what she would get if he died intestate leaving children, not what she would get if there were no children.
All -such- evidence was heard subject to its competency, relevancy and materiality.
Before determining the admissibility of evidence as to the state of testator’s feelings towards his wife and towards his brother James or James’ children, and of any promises or representations by the testator to them, or of what the attorney told the testator as to the laws of Ohio, and especially as to testator’s instructions to the attorney with regard to the disposition of property to be made by his will, it is necessary to determine whether there is any ambiguity in the will itself.
By reference to the laws of Ohio with regard to the distribution of estates in cases where wives survive husbands who die intestate, such laws are incorporated in the will. Such laws are and were at the time of the execution of the will statutory and are and were Sections 4158, 4159, 4163, 4176 and 4188, Revised Statutes (Sections 8573, 8574, 8578, 8592 and 8606, General Code). For the purpose of construing the will such sections may be therefore regarded as set forth in the will the same as if clause *450 two of the will had read, “I give and bequeath to my beloved wife, Mary Foster, all that part and interest in my estate, real, personal and mixed which is secured to her .by the following sections of the Revised Statutes of Ohio, to-wit, Sections 4158, 4159, 4163, 4176 and 4188,” setting them out in full as part of the will.
Applying such sections to the estate left by the testator we find that Sectiion 4188 applies only to ancestral real estate, and there being no such real estate, such section is inapplicable. But Section 4159 applies by its terms to the real estate acquired by purchase, and there being such real estate such section is applicable. Such section, concededly applicable only to real estate in Ohio, is as follows:
Section 4159 (8574, General Code). “If the estate came'not by descent, devise or deed of gift, it shall descend and pass as follows:
‘ ‘ First. To the children of the intestate and their legal representatives.
“Second. If there are no children or their legal representatives, the estate shall pass to and be vested in the husband or wife, relict of such intestate. ’ ’
. If the testator had used the words of the statutes, and he must be considered as adopting them as his will, no ambiguity exists, because by such section and under the conditions set forth in the section itself the real estate would pass to the widow, there being no children.
Reading in the same manner Section 4163 as part of the will, we find it applicable to the personal property. Such section is as follows:
Section 4163 (8578, General Code). “When a person dies intestate and leaves any personal property, such personal property shall be distributed in the manner prescribed in Section 4159, as to real property which came not by descent, devise, or deed of gift from any ancestor; saving, however, such right as any widow or widower may have to any portion of such personal property.” # * *
Under such section as part of clause two of the will, the personal property passes to the widow. Incorporating the other *451 sections referred to as part of the will and applying the will to. the estate as left by the testator, no different result is obtained, nor is there any ambiguity in the construction of the will with all of such sections incorporated.
Inasmuch, therefore, as the will with the statutory provisions of Ohio as to the distribution of estates in cases where wives survive husbands who die intestate incorporated therein word for word, when applied to the testator’s property and the objects of his bounty as set forth in the will, creates no ambiguity, there is no necessity for any extrinsic evidence directly or indirectly as to the testator’s intention. Such evidence is therefore incompetent.
Counsel for the children of James Foster have argued that the testator’s use of the words, “part and interest” in my estate, real, personal and mixed, implies that only part of the personal property was intended to be given to his wife, and that the use of the word “secured” refers not to what Would pass if there were no will, but to that of which the widow could not be deprived by a will being made; that the words of the residuary clause imply an intention that the real estate in Kentucky was not the only property intended to be given to James Foster; that the fact that there was property in Kentucky which would pass under such residuary clause was a mere accident, amd that the nomination of James Foster, an old man living in Illinois, as one of the executors, would be more or less of .an absurd provision if all of the personal property constituting the bulk of the estate was given to the widow; and further, that the fact that the testator made a will shows an intention on his part to make a disposition of his property different from that which would otherwise be made by law, which intention is not fulfilled by the effect of the will as construed by the widow, upon the Kentucky property alone.
No claim is made that the testator’s use of the word “distribution” should be taken in the technical sense as applying only to personal property, although it is claimed that the testator’s use of the plural in his reference to laws of distribution and surviving wives indicates that the testator referred to more than one law and to their application to surviving wives generally, *452 including both classes, with and without surviving children.
All such deductions, although not final, should be considered if there was any doubt after the incorporation into the will of all the laws of distribution applicable to wives surviving husbands who die intestate.
If the laws of distribution of the state of Ohio in cases where wives survive husbands who die intestate can be considered independently of the conditions in such laws as to the property being ancestral or non-anoestral, or as to there being children or not, and if the will itself construed as a whole in connection with the situation and circumstances of the testator does not eliminate the equal force of the different methods of distribution made part of the will, and leave one method as the method provided by the will, clause two of the will would be in its different provisions, irreconcilably in conflict and void for uncertainty. The residuary clause would then operate on all the. estate, except that part of which the widow could not be deprived by will.
The result would be the same if the laws of distribution were considered independently of the conditions in such laws, and the phrase (laws of distribution, etc.) was construed as applicable indifferently to more than one of such laws or methods of distribution, unless by construction or by competent evidence it could be shown to which method such phrase applied.
Rules of construction of wills and the competency of extrinsic evidence in their interpretation are variously stated, but for the purpose of this ease the rules laid down in Worman v. Teagarden, 2 O. S., 380, and Townsend v. Totvnsend, 25 O .S., 477, may be adopted.
Worman v. Teagarden, 2 O. S., 380. Syllabi:
“In construing a will, grammatical accuracy need not be observed, and it should be read with a view to the situation and circumstances of the testator, in reference to the subjects of his dispositions, and the objects of his bounty.
■ ‘ ‘ With these collateral aids to a correct interpretation, the will must speak for itself, and the intention of the testator be gathered from what appears on its face.
“To allow its language to be varied or contradicted, or omissions supplied, or apparent ambiguities to be removed by parol evidence, would, in effect, repeal the law requiring it to be in *453 writing, and introduce all .the uncertainty, fraud and perjury, the statute was designed to prevent.
“No particular form of expression is necessary in a will, to constitute a condition upon which an estate created by it may be defeated.
“But to have that effect, the intention must be clear and unquestionable; especially where a pecuniary recompense may be made, and the obligations imposed, require the performance of many separate acts and continuous duties, extending over a long period of time, and the non-performance of any one of which, might defeat the estate after most of them had been performed. ’ ’
Townsend v. Townsend, 25 O. S., 477. Syllabi:
“1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.
“2. Such intention must be ascertained from the words contained in the will.
“3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear from the context that they were used by the testator in some secondary sense.
“4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it.
“5. If a dispute arises as to the identity of any person or thing named in the will, extrinsic facts may be resorted to, in so far as they can be made ancillary to the right interpretation of the testator’s words, but for no other purpose.”
Amplification o£ such rules are found in Collins v. Hope, 20 Ohio, 492; James v. Pruden, 14 O. S., 251; Baxter v. Bowyer, 19 O. S., 490; Johnson v. Johnson, 51 O. S., 446; Robin v. Smith, 72 O. S., 1; Davis v. Boggs, 20 O. S., 550; Huber v. Cary, 7 C.C. (N.S.), 609; Clark, Executrix, v. Trustee, 3 C. C., 152; Taylor v. Taylor, 7 N.P.(N.S.), 297; King v. Ackerman, 67 U. S., 292.
Manifestly, evidence as to testator’s greater regard for his brother than for his wife, if such was the fact, would not be material in determining whether the phrase ‘ ‘ laws of distribution, ’ ’ etc., if not used in the technical sense, had the secondary meaning in effect claimed in this ease; nor would such evidence be material in identifying with any degree of certainty which of *454 the different methods of distribution was intended to be adopted by the testator. The evidence of the attorney as to what he told the testator might possibly be competent and material in determining the sense in which the phrase was used by the testator, if the attorney had told the testator of only one of the methods of distribution provided by the law of Ohio, but according to the attorney, the testator was fully informed by him as to all of the laws of distribution and the conditions under which they operate in cases where wives survive husbands dying intestate, with or without children.
Independent of the conditions in the laws of distribution the will as a whole does not show to which method of distribution reference is made, if reference is presumed to be made to but one, nor does any of the evidence offered with any degree of certainty remove ambiguity or equivocation, unless that of the attorney with regard to the testator’s instruction to him in the preparation of the will is to be admitted as evidence of intention.
Such evidence is claimed to be competent under Jarman’s Seventh Rule. Such rule as stated n Wigram on Extrinsic Evidence, O’Hara’s Edition, page 189, is as follows:
"Where the object of a testator’s bounty, or the subject of disposition (i. e., the person or thing intended) is described in terms which are applicable indifferently to more than one person or thing, evidence is admissible to prove which of the persons or things so described was intended by the testator. ’ ’
Even under such rule the declarations of the testator as to his intention are an exception, and on page 210«of the above mentioned work, in considering the cases wherein such declarations have been admitted, it is stated that:
"The decisions, then, in the excepted.cases, must, it is conceived, be considered to a great extent as arbitrary, and not to be explained upon any determinate principle. They appear to be decisions in which the general principle has been sacrificed to meet the hardship of particular cases.”
And on p>age 240, it is said:
‘ ‘ The conclusion, then, which these cases’ appear to warrant, is, that the only cases in which evidence to prove intention is ad *455 missible, are those in which the description in the will is unambiguous in its application to each of several subjects.”
In Wigram on Evidence, Section 2471, it is said:
“Among the latter class” (i. e., utterances of the parties showing the sense in which words are used) “there is one forbidden variety, namely, expressions of intention dealing with the subject of the document.”
And in the same section referring to the rule of exclusion:
. “In its ordinary form for wills what it does is to exclude the fact that the draftsman made a mistake, i. e., prevents the testator ’s oral or written instructions or other expressions of intention from being set up to overthrow or replace the words of the will. ’ ’
The attorney’s evidence as to the declarations of intention by the testator only affects the amount of property and the character of the estate given. It does not identify any object ór person or subject, and is therefore not only not within the rule relied upon, but is within the express prohibitions given under the exceptions to such rule.